UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| GREGORY McEVOY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:19-cv-1841-GMB |
| ANDREW SAUL,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

On September 16, 2016, Plaintiff Gregory McEvoy filed an application for a period of disability and disability insurance benefits ("DIB"). His alleged disability onset date is August 30, 2016. McEvoy's application for benefits was denied at the initial administrative level. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on December 20, 2018 and denied McEvoy's claims on February 25, 2019. McEvoy requested a review of the ALJ's decision by the Appeals Council, which declined review on September 12, 2019. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of September 12, 2019.

McEvoy's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a

United States Magistrate Judge. Doc. 10. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence."

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). Yet separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the

Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Plaintiff bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his former occupation?

> (5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

Applying the sequential evaluation process, the ALJ found that McEvoy had not engaged in substantial gainful activity since the alleged August 30, 2016 onset date. R. 17. At step two, the ALJ found that McEvoy suffered from the following severe impairments: fracture of right tibia, depression, bipolar disorder, and alcohol use disorder. R. 17. The ALJ found that McEvoy's other reported impairments were non-severe. R. 18.

At step three, the ALJ found that McEvoy did not have an impairment or combination of impairments meeting or medically equaling the severity of any of

the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18–19. Before proceeding to step four, the ALJ determined that McEvoy had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except

> the claimant can stand for a total of four hours per eight-hour workday. Can never use foot controls bilaterally. Can never climb ladders, ropes or scaffolds. Can occasionally balance, kneel, crouch, or crawl. Limited to jobs that can be performed while using a hand held assistive device required: only for uneven terrain or prolonged ambulation. Can never be exposed to workplace hazards such as moving mechanical parts and high, exposed places. Can work in a low stress work environment, defined as: tasks that are simple and routine in nature, no inflexible or fast-paced production requirements (such as assembly line work), and no more than occasional changes in work setting. Can tolerate occasional interaction with the public, and occasional interaction with coworkers. Can accept instructions and respond appropriately to supervisors, where this interaction occurs occasionally throughout the day.

R. 19–20. In reaching this opinion, the ALJ stated that he considered McEvoy's symptoms, the medical evidence, and other evidence. R. 20.

Because the ALJ determined that McEvoy was unable to perform any past relevant work at step four (R. 24), the ALJ relied on the testimony of a vocational expert ("VE") in identifying a significant number of jobs in the national economy McEvoy can perform. R. 24–25. Thus, the ALJ found McEvoy not to be disabled at step five of the five-step sequential evaluation process. R. 25.

### III.  RELEVANT FACTUAL BACKGROUND

McEvoy was 50 years old at the alleged onset of disability and 53 years old at the time of the ALJ's decision. R. 15 & 35.  His primary complaints are depression, bipolar disorder, anxiety, and an injury to his right leg. R. 20 & 40–44.  In his disability report, McEvoy alleged that he "can't walk." R. 254.  McEvoy reported a history of alcohol abuse but testified that he had been sober for three years. R. 46.  He testified that he can stand for an hour at a time. R. 47.  He also testified that the heaviest thing he can lift is a gallon of milk. R. 50.

McEvoy was in special education classes during high school and graduated with a high school equivalency degree. R. 38.  He did not attend college or a vocational school. R. 38.  He alleges that he can read but cannot write legibly. R. 38.  From 1994 to 2016, he worked multiple restaurant jobs as a cook. R. 40 & 223–24.

In September 2016, McEvoy underwent an operation after part of a building collapsed on him and broke his knee. R. 281.  A spanning external fixator was placed in his right knee. R. 281.  According to his discharge summary, McEvoy tolerated the procedure well. R. 281.  Later that month, a second operation was performed on his right knee. R. 321.  McEvoy experienced no complications. R. 322.  In an October follow-up, McEvoy reported that his postoperative pain was resolving but

he was experiencing some drainage. R. 325.  He denied feeling numbness, tingling, or paralysis. R. 328.

On December 13, 2016, McEvoy underwent a mental examination performed by June Nichols, Psy.D. R. 332–35.  Dr. Nichols noted that McEvoy was diagnosed with autism as a child. R. 332.  He reported that he was taking bipolar medication at the time. R. 332.  He alleged that a barn collapsed on him and broke his leg. R. 332.  After multiple operations, he alleged that he cannot walk or stand on his right leg and that his right leg and foot swell. R. 332.

Dr. Nichols observed that McEvoy spoke clearly and normally. R. 333.  He was slightly agitated and reported trouble sleeping because of his pain. R. 333.  He reported panic attacks and discomfort when in a crowd. R. 334.  His judgment and insight were good, and he was functioning in the average range of intellectual ability. R. 334.  Dr. Nichols noted bipolar disorder, panic disorder, and a specific learning disability in her diagnostic impression. R. 334.  She commented that McEvoy experiences anxiety when he is in groups of people, which he believes to be a symptom of his autism. R. 335.  She noted that he has always worked jobs that allowed him to work alone but that he can no longer maintain the physical requirements of his previous employment. R. 335.  She opined that his "ability to respond appropriately to supervision, to coworkers and to work pressures in the work

setting [is] impaired." R. 335. She also concluded that "[h]e does have deficits, which would interfere with his ability to remember, understand and carry out work related instructions." R. 335.

In January 2017, Dr. Leslie Rodriguez concluded that McEvoy could carry out simple instructions and sustain attention for simple tasks. R. 86. She also noted that he would benefit from a flexible schedule and casual supervision. R. 86. She found that he would likely work best in his own work area without close proximity to others. R. 86. She concluded that McEvoy could maintain a consistent work pace but would benefit from regular breaks and should avoid excessive workloads, rapid changes, and multiple demands. R. 86.

In May 2017, McEvoy reported that his medications were helping him "not blow up as much or be so moody." R. 363. He denied any side effects from the medication. R. 363. His appetite and sleeping were both good. R. 363. In June and August 2017, McEvoy reported that he was not using alcohol and was attending AA meetings. R. 360 & 362.

In November 2017, McEvoy again reported that his medication was working and was not causing side effects. R. 355. He was not having any problems with appetite or sleep. R. 355. During therapy sessions in March, April, and May 2018,

9

McEvoy reported increased anger (R. 354), increased mood swings (R. 352), and increased stress (R. 351).

On November 5, 2018, McEvoy went to the J.W. Stewart Neighborhood Clinic reporting moderate knee pain. R. 387. Bending, climbing, walking, and standing aggravated the pain. R. 387. The examining physician found that his major depressive disorder was stable. R. 394. His mood and affect were appropriate, and he was oriented to time, place, person, and situation. R. 393. On November 13, 2018, McEvoy reported doing "okay." R. 381. He was experiencing leg pain and reported that he could only afford to take his bipolar medication once a day even though he should have been taking it twice a day. R. 381. But he denied any substance abuse for the past three years. R. 381. He presented mostly normal findings on examination. R. 381. In December 2018, McEvoy again reported knee pain. R. 397. He was not agitated or anxious and was properly oriented with normal balance and gait and a benign psychiatric presentation. R. 401.

## IV. DISCUSSION

McEvoy makes two arguments in favor of remand: (1) the ALJ failed to give proper weight to the opinion evidence of Dr. Nichols and (2) the ALJ's RFC assessment is conclusory and is not supported by substantial evidence. The court addresses each argument in turn.

### A.     Dr. Nichols' Medical Opinion

"In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, whether the opinion is consistent with the record and the doctor's specialization." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)).  The opinions of examining physicians are given more weight than those of non-examining physicians, and the opinions of treating physicians are given substantial weight unless the ALJ shows good cause for not doing so. *See id.*  "The opinions of non-examining, non-reviewing physicians, are entitled to little weight when contrary to those of an examining physician, and taken alone, they do not constitute substantial evidence." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 901 (11th Cir. 2012).

The "ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition." *Smith v. Astrue*, 641 F. Supp. 2d 1229, 1233 (N.D. Ala. 2009).  Rather, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  And the ALJ must state "the grounds for his decision" with "some measure of clarity." *Id.*  The court "will not second guess the ALJ about the weight the . . . physician's opinion deserves so

long as he articulates a specific justification for it." *Hunter v. Comm'r of Soc. Sec. Admin.*, 808 F.3d 818, 823 (11th Cir. 2015).

McEvoy argues that the ALJ failed to give proper weight to Dr. Nichols' opinion and substituted his own judgment for hers. Doc. 13 at 10. The ALJ assigned Dr. Nichols' opinion partial weight because she had the opportunity to review only a portion of the record and because she did not provide "a function-by-function assessment in work related terms." R. 22. In formulating an RFC assessment, the ALJ must identify the individual's limitations and "work-related abilities on a function-by-function basis." Social Security Ruling (SSR) 96-8p, 61 Fed. Reg. 34,475 (July 2, 1996). Thus, the ALJ provided a specific justification for limiting the weight of Dr. Nichols' opinion. And as discussed below the ALJ considered the entirety of the record, including other medical evidence, in determining McEvoy's RFC. *See infra* Part IV.B. For these reasons, the court finds that there is substantial evidence supporting the ALJ's decision to assign partial weight to Dr. Nichols' opinion.

**B.    RFC Assessment**

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . . In assessing RFC, the adjudicator must discuss the individual's ability

to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . , and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Social Security Ruling (SSR) 96-8p, 61 Fed. Reg. 34,478 (July 2, 1996).

McEvoy argues that the ALJ failed to follow SSR 96-8p by issuing a conclusory RFC assessment devoid of analysis or reference to the supporting evidence. Doc. 13 at 18. McEvoy is incorrect. The ALJ devoted four pages of his findings to a detailed analysis of the record supporting his RFC assessment. R. 20–23.

McEvoy also argues that the RFC assessment is not supported by substantial evidence. Doc. 13 at 19–21. However, the record reflects substantial evidence supporting the ALJ's RFC assessment. McEvoy had a successful knee surgery in 2016, and he reported that his pain was diminishing and that he did not feel any numbness in a follow-up appointment. R. 281, 321, 322, 325 & 328. He still was reporting knee pain in December 2018, but the pain was being managed with medication and not physical therapy, and his balance and gait were normal. R. 401.

The ALJ's RFC assessment accounted for Dr. Nichols' findings but also reflected the extensive mental health evidence in the record. Dr. Nichols concluded that McEvoy would have difficulty responding appropriately to supervisors,

coworkers, and a work setting. R. 335. The RFC assessment reflects these findings because it restricts McEvoy to a "low stress work environment" with "occasional interaction with coworkers" and occasional interaction with supervisors. R. 19–20. And the ALJ's finding that McEvoy can perform light work is supported by the opinion of Dr. Leslie Rodriguez, a non-examining medical consultant, who opined that McEvoy could carry out simple instruction and work at a consistent pace. R. 86. Throughout 2017 and 2018, McEvoy's medical records show that his medications were helping to manage his psychiatric disorders, although he was not always able to take his prescribed medications and still experienced some mood swings. R. 351–54, 381 & 393–94. On this record, the court finds that the ALJ properly formulated the RFC assessment and that it is supported by substantial evidence.

## V.  CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on February 25, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE